1
ILYCE SHUGALL
ilyce@ild.org
2
CA State Bar No.: 250095
SIOBHAN WALDRON
3
siobhan@ild.org
CA State Bar No.: 286378
4
IMMIGRANT LEGAL DEFENSE
1322 Webster St #300,
5
Oakland, CA 94612
Tel: (415) 758-3765
6

A. NICOLE HALLETT (*pro hac vice* pending)
7
Illinois State Bar No: 6334828
nhallett@uchicago.edu
8
EDWIN F. MANDEL LEGAL AID CLINIC
6020 S. University Ave.
9
Chicago, IL 60637
Tel: (203) 910-1980
10

## UNITED STATES DISTRICT COURT
11
## NORTHERN DISTRICT OF CALIFORNIA

12
OMAR AMEEN,                          )
                Petitioner,          )
13                                   )
        vs.                          )
14                                   )
                                     )
15
MERRICK GARLAND, in his official     )   Case No.:
capacity, Attorney General of the United )   IMMIGRATION HABEAS CASE
16
States; ALEJANDRO MAYORKAS, in       )
his official capacity, Secretary of the U.S. )
17
Department of Homeland Security;     )
DAVID JENNINGS, in his official      )
18
capacity, Director of the San Francisco
ICE Field Office
19
                Respondents.
20

21

22
## VERIFIED PETITION FOR WRIT OF
## HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241
23

24

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

JURISDICTION AND VENUE .....................................................................................3

ADMINISTRATIVE EXHAUSTION ...........................................................................5

PARTIES ........................................................................................................................7

STATEMENT OF FACTS..............................................................................................7

   I. Mr. Ameen's Background ........................................................................................7

   II. Mr. Ameen's Arrest and Extradition Proceedings................................................8

   III. Mr. Ameen's Removal Proceedings ...................................................................11

   IV. Mr. Ameen's Bond Proceedings .........................................................................15

LEGAL ARGUMENT ...................................................................................................19

   I. The Immigration and Nationality Act Places the Burden of Proof on the Government
      in Bond Hearings Under 8 U.S.C. § 1226(a) ........................................................19

   II. The Due Process Clause Requires the Government to Bear the Burden of Proof By
      Clear and Convincing Evidence in Bond Hearings Under 8 U.S.C. § 1226(a) .................21

      A.    Mr. Ameen's detention is prolonged and *Singh*'s holding on burden of
            proof in prolonged detention cases is controlling precedent in Mr.
            Ameen's removal proceedings. ..........................................................22

      B.    The Due Process Clause requires the government to bear the burden by
            clear and convincing evidence even if Mr. Ameen's detention is not
            considered prolonged. ........................................................................26

   III. The Immigration Judge Erred in Unevenly Applying Evidentiary Rules Resulting in
      a Fundamentally Unfair Hearing ..........................................................................28

   IV. Mr. Ameen is Not a Danger to the Community or a Flight Risk Under Any Burden
      of Proof ...................................................................................................................31

      A.    Mr. Ameen is not a danger to the community....................................31

      B.    Mr. Ameen is not a flight risk. ..........................................................33

   IV. This Court Should Grant Mr. Ameen's Immediate Release or, in the Alternative,
      Order a New Bond Hearing...................................................................................36

1

CLAIMS FOR RELIEF ................................................................................. 37

2

DUE PROCESS CLAUSE – FIFTH AMENDMENT ..................................... 37

3

IMMIGRATION AND NATIONALITY ACT 8 U.S.C. § 1226(a) ............................................ 37

4

PRAYER FOR RELIEF ................................................................................. 38

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1

**TABLE OF AUTHORITIES**

2  **Cases**

3  *Addington v. Texas*, 441 U.S. 418 (1979) ................................................................25

4  *Aleman Gonzalez v. Barr*, 955 F.3d 762 (9th Cir. 2020), *cert. granted on other grounds*,

5    *Garland v. Gonzalez*, 210 L. Ed. 2d 1009 (Aug. 23, 2021) ....................................23

6  *Al-Sadeai v. U.S. Immigr. & Customs Enf't*, 21-CV-00296-GPC-MDD, 2021 WL

7    1978474 (S.D. Cal. May 18, 2021)........................................................................28

8  *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973)....................4

9  *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008)........................................22

10  *Cortez v. Sessions*, 318 F. Supp. 3d 1134 (N.D. Cal. 2018) ..................................24

11  *Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571 (N.D. Cal. 2020)...............................23, 28

12  *Darko v. Sessions*, 342 F. Supp. 3d 429 (S.D.N.Y. 2018) ......................................28

13  *Demore v. Kim*, 538 U.S. 510 (2003) ...........................................................4, 20, 21

14  *Doe v. Barr*, 20-CV-02263-RMI, 2020 WL 1984266 (N.D. Cal. Apr. 27, 2020)........................5

15  *Elkins v. United States*, 364 U.S. 206 (1960).........................................................27

16  *Foucha v. Louisiana*, 504 U.S. 71 (1992)...................................................21, 25, 27

17  *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227 (9th Cir. 2007)..........................6

18  *Gonzalez v. Bonnar*, 18-CV-05321-JSC, 2019 WL 330906 (N.D. Cal. Jan. 25, 2019) ..............24

19  *Hensley v. Mun. Court*, 411 U.S. 345 (1973).........................................................4

20  *Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017) ..........................................5, 6

21  *Hernandez-Lara v. Lyons*, 10 Fed. 4th 19 (1st Cir. Aug. 19, 2021)...................27, 28

22  *INS v. Cardoza-Fonseca*, 480 U.S. 421 (1987).......................................................20

23  *Ixchop Perez v. McAleena*n, 435 F. Supp. 3d 1055 (N.D. Cal. 2020)...................24, 28

24

*Jennings v. Rodriguez*, 138 S.Ct. 830 (2018) ............................................................ 4, 19, 23, 24

*Jones v. United States*, 463 U.S. 354 (1983) ............................................................ 21

*Kansas v. Hendricks*, 521 U.S. 346 (1997) ............................................................ 21, 25, 26

*Liu v. Waters*, 55 F.3d 421 (9th Cir. 1995) ............................................................ 6

*Lorillard v. Pons*, 434 U.S. 575 (1978) ............................................................ 20, 21

*Marroquin Ambriz v. Barr*, 420 F. Supp. 3d 953, 961 (N.D. Cal. 2019), *appeal dismissed*

   *sub nom. Ambriz v. Barr*, No. 19-17559, 2020 WL 3429471 (9th Cir. Mar. 25, 2020) ....... 6, 28

*Mathews v. Eldridge,* 424 U.S. 319 (1976) ............................................................ 26

*Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999) ............................................................ 6, 18

*Matter of A-G-G-*, 25 I&N Dec. 486 (BIA 2011) ............................................................ 35

*Matter of Extradition of Ameen*, 2:18-MJ-152-EFB, 2021 WL 1564520 (E.D. Cal. Apr.

   21, 2021).............................................................................................................................. 9, 10, 11

*Matter of Guerra*, 24 I&N Dec. 37 (2006).............................................................................. 6, 18

*Matter of Kodwo*, 24 I&N Dec. 479 (BIA 2008)............................................................ 35

*Matter of Patel*, 15 I&N Dec. 666 (BIA 1976) ............................................................ 20

*Matter of Soleimani*, 20 I&N Dec. 99 (BIA 1989) ............................................................ 34

*Nken v. Holder*, 556 U.S. 418 (2009) ............................................................ 20

*Puga v. Chertoff*, 488 F.3d 812 (9th Cir. 2007) ............................................................ 6

*Rajesh v. Barr*, 420 F.Supp.3d 78 (W.D.N.Y. 2019)............................................................ 28

*Ramos v. Sessions*, 8-CV-00413-JST, 2018 WL 905922 (N.D. Cal. Feb. 15, 2018) .................. 30

*Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015) ............................................................ 23

*Sales v. Johnson*, 323 F. Supp. 3d 1131 (N.D. Cal. 2017).......................................................... 31

*Singh v. Barr,* 20-CV-02346-VKD, 2020 WL 2512410 (N.D. Cal. May 15, 2020) ..................... 5

*Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011)......................................................... 4, 22, 23

*United States v. Salerno*, 481 U.S. 739 (1987)..............................................................21

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) .......................................... 22, 24

*Woodby v. INS*, 385 U.S. 276 (1966)...............................................................................14

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ............................................... 4, 21, 26, 27

**Statutes**

28 U.S.C. § 1331............................................................................................................3

28 U.S.C. § 2241............................................................................................ 1, 3, 4, 5

28 U.S.C. § 2412..........................................................................................................38

8 U.S.C. § 1225(b) .......................................................................................................19

8 U.S.C. § 1226(a) .............................................................................................. passim

8 U.S.C. § 1226(c) ................................................................................................ 19, 22

8 U.S.C. § 1226(c)(1)(D) ..................................................................................... 12, 17

8 U.S.C. § 1226(c)(2) ...................................................................................................19

8 U.S.C. § 1226(e) .........................................................................................................4

8 U.S.C. § 1227(a)(1)(A) ..............................................................................................11

8 U.S.C. § 1227(a)(4)(B) ..............................................................................................13

8 U.S.C. § 1252(a) ................................................................................................. 4, 38

8 U.S.C. § 1252(a)(1) ........................................................................................... 20, 21

8 U.S.C. § 1391(b)(1) .....................................................................................................4

8 U.S.C. § 1391(b)(2) .....................................................................................................4

**Constitutional Provisions**

U.S. Const. amend. V............................................................................................. passim

U.S. Const. Art. I § 9, cl. 2 .................................................................................................3

Petitioner Omar Ameen respectfully asks the Court to issue a writ of habeas corpus ordering his release from unlawful detention pursuant to 28 U.S.C. § 2241. He avers as follows:

## INTRODUCTION

1.   Mr. Ameen is the victim of a malicious campaign by the U.S. government, led by the Department of Justice, to strip him of his refugee status and to force his return to Iraq, where he faces certain torture and death on the basis of unsubstantiated rumors and blatant lies.

2.   The government's allegations that Mr. Ameen is a terrorist and that he has engaged in terrorist activities are false and have no basis in fact.

3.   The government arrested Mr. Ameen in 2018 and placed him in extradition proceedings based on an Iraqi warrant for a 2014 murder that he did not commit.

4.   After Mr. Ameen spent more than two and a half years in U.S. Marshal custody, Magistrate Judge Edmund F. Brennan declined to order Mr. Ameen's extradition, finding that the government's accounting of events was dubious and that Mr. Ameen was not in Iraq when the murder occurred and could not have committed it.

5.   Judge Brennan rejected the government's witnesses' accounts of events, describing their statements as unreliable, implausible, and inconsistent. Judge Brennan also found that there was no corroborating evidence that Mr. Ameen had any involvement with the Islamic State ("ISIS").

6.   Judge Brennan ordered Mr. Ameen's immediate release from federal custody.

7.      Instead of releasing Mr. Ameen, the U.S. Marshals transferred him to the custody of Immigration and Customs Enforcement ("ICE") on April 21, 2021 and, based on the August 16, 2018 Notice to Appear, pursued removal proceedings against him.

8.      In the removal proceedings, the government dropped the allegation regarding the 2014 murder in Iraq but otherwise continued to allege that Mr. Ameen engaged in terrorist activity and had ties to ISIS and other terrorist groups.

9.      On April 21, 2021, Mr. Ameen, through his extradition counsel, requested his release from ICE detention. On May 7, 2021, Mr. Ameen, through current immigration counsel, filed a supplemental release request with ICE. After the release requests, ICE continued to detain Mr. Ameen.

10.     After six full days of contested removal hearings spanning the course of four months, the immigration judge found that the government had not met its burden of proving its terrorism-based allegations against Mr. Ameen, while sustaining several allegations regarding misstatements on Mr. Ameen's refugee application.

11.     Despite finding that the government had not proved that Mr. Ameen was involved with terrorism and finding that Mr. Ameen was not subject to mandatory detention based on the government's allegations, the immigration judge denied Mr. Ameen's request for bond.

12.     On December 17, 2021, the immigration judge issued a bond memorandum setting forth the basis for her decision. She found that the burden of proof was on Mr. Ameen to demonstrate he was not a danger or flight risk.

13.    The immigration judge concluded that Mr. Ameen could not prove that he was not a danger because of his interactions with individuals associated with terrorist organizations—specifically, his cousin Ghassan.

14.    The immigration judge also concluded that Mr. Ameen was a flight risk because of the outstanding warrants for his arrest in Iraq while discounting the evidence of his family and community ties in the United States.

15.    Mr. Ameen has now been in ICE custody for over eight months, and he has been in federal custody for over three years in total.

16.    Mr. Ameen's removal proceedings are still ongoing, and it is likely to be months or years before they are resolved.

17.    The government has never proven that Mr. Ameen participated in terrorist activities, was involved in terrorist organizations, or committed any acts of violence or terrorism, yet it continues to detain him, alleging he is a danger to the community and national security.

18.    His prolonged detention violates the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment of the U.S. Constitution and he seeks immediate release. Alternatively, he seeks a new bond hearing where the burden of proof is properly placed on the government.

**JURISDICTION AND VENUE**

19.    This Court has subject matter jurisdiction over this Petition pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 1331, and the Suspension Clause of the United States Constitution, Art. I, sec. 9, cl. 2.

20.    Mr. Ameen's current detention constitutes a "severe restraint[ ]" on his individual liberty such that Petitioner is "in custody" of the Respondents in

violation of the laws of the United States. *Hensley v. Mun. Court*, 411 U.S. 345, 351 (1973); 28 U.S.C. § 2241.

21.    While only the federal courts of appeals have jurisdiction to review removal orders through petitions for review under 8 U.S.C. § 1252(a), federal district courts have jurisdiction to hear habeas corpus claims by noncitizens challenging the lawfulness of detention by the Department of Homeland Security. *See, e.g.*, *Jennings v. Rodriguez*, 138 S.Ct. 830, 838–39 (2018); *Demore v. Kim*, 538 U.S. 510, 514–15 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

22.    8 U.S.C. § 1226(e) does not prevent this Court from exercising jurisdiction over Mr. Ameen's petition because he does not seek review of a discretionary decision but rather challenges his detention on constitutional and statutory grounds. *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[A]lthough the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.") (citations omitted) (omission in original). *See also Jennings*, 138 S. Ct. at 841 ("[B]ecause the extent of the Government's detention authority is not a matter of 'discretionary judgment,' . . .  respondent's challenge to 'the statutory framework that permits [their] detention without bail,' falls outside of the scope of § 1226(e).") (alteration in original).

23.    Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484 (1973) and 8 U.S.C. §§ 1391(b)(1), (2), venue is proper in the United States District Court for the Northern District of California.

Petition for Writ of Habeas Corpus                4

24. Mr. Ameen is detained at the Golden State Annex, a facility that is under the jurisdiction of the ICE Field Office in San Francisco.

25. As the Director of the ICE Field Office in San Francisco, Respondent David Jennings is located within the district and is one of Mr. Ameen's legal custodians. *Singh v. Barr*, 20-CV-02346-VKD, 2020 WL 2512410, at *4 (N.D. Cal. May 15, 2020); *Doe v. Barr*, 20-CV-02263-RMI, 2020 WL 1984266, at *5 (N.D. Cal. Apr. 27, 2020).

### ADMINISTRATIVE EXHAUSTION

26. Although petitions under 28 U.S.C. § 2241 are not subject to statutory exhaustion requirements, Mr. Ameen has exhausted all reasonable administrative remedies here.

27. Mr. Ameen moved for a custody redetermination in immigration court on December 2, 2021.

28. On December 10, 2021, the immigration judge conducted a hearing and denied Mr. Ameen's request for a custody redetermination. Mr. Ameen filed a notice of appeal of that decision to the Board of Immigration Appeals ("BIA") on that same day. On December 23, 2021, the BIA issued a briefing schedule, ordering the parties to file briefs on or before January 13, 2022.

29. Mr. Ameen is not required to wait for the outcome of his bond appeal to file this petition. The Ninth Circuit has made clear that administrative exhaustion will not deprive a court of jurisdiction to review an immigration bond determination. *Hernandez v. Sessions*, 872 F.3d 976, 988–89 (9th Cir. 2017).

30. Nor is a prudential exhaustion of administrative remedies requirement appropriate in this case. There is an adequate record in this case to facilitate

1    judicial review and the BIA is not likely to correct the errors that occurred in the

2    bond hearing.

3    31.    First, "the BIA has no jurisdiction to decide questions of the constitutionality of

4         the immigration laws." *Liu v. Waters*, 55 F.3d 421, 426 (9th Cir. 1995).

5    32.    Second, the BIA precedent places the standard of proof in bond proceedings on

6         the detained noncitizen. *See Matter of Adeniji*, 22 I&N Dec. 1102, 1116 (BIA

7         1999); *Matter of Guerra*, 24 I&N Dec. 37, 40 (2006). It has therefore adopted a

8         clear position that is unlikely to change upon review of Petitioner's appeal.

9         *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1234 (9th Cir. 2007).

10   33.    The *Puga* factors govern when prudential exhaustion may be required,

11        dependent upon (1) agency expertise; (2) potential for bypass of the

12        administrative scheme; and (3) potential for the agency to correct its own

13        mistakes through administrative review. *See Puga v. Chertoff*, 488 F.3d 812,

14        815 (9th Cir. 2007). Even if these factors weighed in favor of requiring

15        prudential exhaustion, this Court should waive the requirement because

16        irreparable injury will result if Mr. Ameen must wait for the BIA to decide his

17        bond appeal. *Hernandez*, 872 F.3d at 988; *see also Marroquin Ambriz v. Barr*,

18        420 F. Supp. 3d 953, 961 (N.D. Cal. 2019), *appeal dismissed sub nom. Ambriz

19        v. Barr*, No. 19-17559, 2020 WL 3429471 (9th Cir. Mar. 25, 2020) (noting the

20        government's concession that "there is no deadline by which the BIA must

21        decide the appeal").

22

23

24

34.     If Mr. Ameen were required to wait for a decision from the BIA on his bond appeal, his unconstitutional deprivation of liberty would continue for months before he could pursue relief from this Court.

## PARTIES

35.     Petitioner Omar Ameen is a 48-year-old husband and father of four who, prior to his detention, resided in Sacramento, California with his wife and children. He and his family entered the country as refugees from Iraq in 2014.

36.     Respondent Merrick Garland is the Attorney General of the United States, the most senior official in the U.S. Department of Justice ("DOJ"), and named in his official capacity. The Attorney General delegates responsibility over removal proceedings, including custody redeterminations, to the Executive Office of Immigration Review, which administers the immigration courts and the Board of Immigration Appeals. He is a legal custodian of Mr. Ameen with authority to authorize his release.

37.     Respondent Alejandro Mayorkas is the Secretary of the Department of Homeland Security ("DHS") of the United States and named in his official capacity. ICE, which is detaining Mr. Ameen, is a sub-agency of DHS.

38.     Respondent David Jennings is the Director of the ICE Field Office in San Francisco and is a legal custodian of Mr. Ameen.

## STATEMENT OF FACTS

### I. Mr. Ameen's Background

39.     Mr. Ameen is a 48-year-old Sacramento resident who has lived in the United States for over seven years. *See* Waldron Decl. Exh. A at 20–42, 64. He arrived in the United States on November 4, 2014 as a refugee from Iraq. *Id.* at 41.

40.     Mr. Ameen has no prior criminal record, nor was he involved in trouble of any kind after arriving in the United States. *See id.* at 76–81.

41.     Mr. Ameen's wife and three older children are refugees and his youngest child, J.A., is a United States citizen. *See id.* at 39–42. His children A.A., Z.A., and F.A. are all enrolled in local public schools in Sacramento, California and are in grades 12, 8, and 7, respectively. *See id.* at 44–47.

42.     Mr. Ameen is a committed and caring family man. Mr. Ameen has been married to his wife Khansaa Sabri for 20 years. *See id.* at 76.

43.     Mr. Ameen worked hard to set down roots for his family in Sacramento. His neighbors recall the Ameens as a welcoming, peaceful family who regularly shared their desserts. *Id.* at 87; *see also id.* at 85–86, 89–92.

44.     One neighbor, motivated by Mr. Ameen's friendly and helpful nature, offered him a job at a repair shop. *See id.* at 85. Mr. Ameen worked there for nearly two years. *See id.*

45.     Before August 2018, Mr. Ameen was working two jobs and enrolled at American River College, taking English and vocational classes to better integrate into the community and support his family. *Id.* at 49, 73–74, 93.

## II. Mr. Ameen's Arrest and Extradition Proceedings

46.     On August 15, 2018, the FBI, an agency within the Department of Justice, arrested Mr. Ameen, executed a search warrant on his residence, transported him to the FBI field office and interrogated him. *See* Waldron Decl. ¶ 4. He has been in federal custody since that day despite the fact that the U.S. government has never charged him with a crime. *See id.* ¶¶ 4, 6–7.

47.   His 2018 arrest stemmed from an investigation initiated by the FBI together with other agencies that make up the Joint Terrorism Task Force ("JTTF"). *See* Exh. C at 1294–96.

48.   Since it first invaded Iraq, the U.S. government weaponized personal and tribal feuds to find targets in its war on terror. The Government exploited human intelligence to single out individuals and groups for torture and imprisonment, and to justify its actions in the public eye. *See* Exh. B at 972–73, 1064–1102; *see also id.* at 470–72.

49.   As a result of the war on terror, countless individuals have been imprisoned, tortured, and killed. *See id.* at 470–72, 1082, 1091, 1099–1102.

50.   A witness who spoke to the FBI during its investigation of Mr. Ameen accused him of murdering a man named Ihsan Jasim, a member of the Rawah police who had previously undertaken anti-terrorism efforts on behalf of the Iraqi national security forces. *See Matter of Extradition of Ameen*, 2:18-MJ-152-EFB, 2021 WL 1564520, at *7 (E.D. Cal. Apr. 21, 2021).

51.   Mr. Ameen was not present in Iraq when the murder took place. *See* Exh. B at 911–24; *see also* Exh. B at 999–1011; Exh. A at 120. By then, he had already been living as a refugee in Turkey for two years and was compliant with stringent weekly reporting requirements that all refugees in Turkey must follow per Turkish government rules. *See* Exh. B at 999–1011; *see also* Exh. A at 150–51.

52.   After the United States Attorney's office, an agency within DOJ, spent more than two and a half years pursuing extradition proceedings, U.S. Magistrate

Judge Edmund F. Brennan of the Eastern District of California declined to certify the extradition request on April 21, 2021. *See Matter of Extradition of Ameen*, 2021 WL 1564520. Throughout the case, the government fought to withhold evidence from Mr. Ameen that proved his innocence. *See* Waldron Decl. ¶ 5.

53.    In his decision, Judge Brennan excoriated the government's case against Mr. Ameen. First, he found "dubious" the government's argument that Mr. Ameen had traveled to Rawah to commit the murder despite refugee logbooks and cell phone records placing him in Turkey. *Matter of Extradition of Ameen*, 2021 WL 1564520, at *11.

54.    The Court also noted that Mr. Ameen had taken and passed a polygraph test. *Id.*

55.    Importantly, the Court found several of the government's key witnesses to be inconsistent and unreliable. *Id.* at *15-16.

56.    With respect to the only witness who claimed to have seen Mr. Ameen kill Mr. Jasim, the Court found his account of the murder implausible, and found it further undercut by the fact that the witness had made several other allegations "that are absurd on their face." *Id.* at *15–16.

57.    The Court similarly rejected the allegations of the other informants. *Id.* at *12–15.

58.    The Court not only concluded that the government failed to show probable cause to believe that Mr. Ameen had committed the murder, but also rejected the government's terrorism accusations entirely, finding that "there is no

1    corroborative evidence in the record that Ameen occupied such a high-level

2    leadership role in ISIS." *Id*. at *16.

3    59.    The Court ordered Mr. Ameen released from custody immediately unless the

4           government detained him on terrorism-related criminal charges, noting that it

5           was "regrettable that the case [had] taken more than two years to litigate." *Id.*

6  **III. Mr. Ameen's Removal Proceedings**

7    60.    The government did not release Mr. Ameen, nor did it bring criminal charges

8           against him. Instead, on April 21, 2021, it transferred him into ICE custody and

9           proceeded on the removal proceedings initiated by the Notice to Appear issued

10          in 2018. *See* Exh. C at 1294–96.

11   61.    The government charged Mr. Ameen as removable under

12          8 U.S.C. § 1227(a)(1)(A), which states that "[a]ny [non-citizen] who at the time

13          of entry . . . was within one or more of the classes of aliens inadmissible by the

14          law existing at such time is deportable." *See* Exh. C at 1291.

15   62.    The government alleged that Mr. Ameen was inadmissible at the time of his

16          entry because he had made various material misrepresentations on his refugee

17          application. *Id.*

18   63.    To support this charge, the government submitted an FBI Letterhead

19          Memorandum ("LHM") which contains internally inconsistent and often vague

20          statements detailing the terrorism allegations against Mr. Ameen. Waldron

21          Decl. ¶ 10. The government subsequently submitted several supplemental

22          LHMs in an attempt to bolster its case. *Id.* ¶ 13.

23

24

64.     Through the LHMs, the government made fantastical claims about Mr. Ameen's involvement in terrorist activities.

65.     For example, the government alleged that Mr. Ameen was the founder of Jama'at al-Tawhid wal-Jihad, the precursor organization to Al-Qaida in Iraq, despite the government's repeated representations over many years that the organization was actually founded by Abu Musab al-Zarqawi. *See id.* ¶ 10; Exh. B at 1156–1231.

66.     The government also accused Mr. Ameen of: working for Ghassan in 2007 even though the government's scant evidence alleges that Ghassan was in custody following his arrest on terrorism charges in 2005; kidnapping several individuals in 2016 when it was undisputed that Mr. Ameen was already in the United States; and being an ISIS commander in Rawah in 2014 despite living as a refugee in Turkey at that time. *See* Waldron Decl. ¶ 11.

67.     The government also argued that Mr. Ameen was not eligible for bond because he was properly held under 8 U.S.C. § 1226(c)(1)(D), which requires the government to detain certain non-citizens in removal proceedings, including non-citizens who have committed terrorism-related offenses.

68.     At Mr. Ameen's first hearing on May 13, 2021, counsel for Mr. Ameen raised the question of a bond hearing. The Immigration Judge asked DHS for its position on bond. Counsel for DHS indicated that it was the government's position that Mr. Ameen was subject to mandatory detention pursuant to 8 U.S.C. § 1226(c)(1)(D) because the government believed Mr. Ameen was deportable under 8 U.S.C. § 1227(a)(4)(B), despite its failure to charge him as

such. *See* Waldron Decl. ¶ 15. The Immigration Judge indicated that removability was inextricably linked to bond eligibility and that the same evidence would be necessary for each proceeding. *Id.* He therefore opined that the best course of action was to address removability first. Mr. Ameen's counsel agreed. *Id.*

69.   Between July and October 2021, the immigration court conducted six days of hearings on removability. *Id.* ¶ 16–22.

70.   During these hearings, the government opposed turning over any of the evidence that served as the source for the LHMs. *See id.* ¶ 12. It refused to acknowledge that the same informants were responsible for the allegations in both the removal and extradition proceedings, despite the obvious similarities of the statements and allegations. *Id.* It further refused to identify the author of the LHM. *See id.* ¶¶ 10, 12.

71.   The government refused to provide the affidavit for the search warrant, which remained under seal in the extradition case. Subsequently, the district court granted a motion to unseal the search warrant and affidavit. The search warrant affidavit highlighted the inconsistencies in the government's evidence. *See* Exh. B at 1237–84.

72.   In his removal proceedings, the government failed to produce a single witness with personal knowledge of the terrorism allegations against Mr. Ameen, instead relying almost entirely on the testimony of former FBI Special Agent William Denton. *See* Exh. B at 856. Mr. Denton's testimony often relied on double, triple, and quadruple hearsay.

73. Even with the government's stonewalling, Mr. Ameen presented copious evidence to show that the LHMs and the witnesses referenced therein were not credible. *See generally* Exh. B. Mr. Ameen also submitted rebuttal evidence showing he has no involvement with terrorism. *See* Exh. B at 805-989.

74. In August, after issuing a preliminary order that was favorable to Mr. Ameen, excluding several pieces of DHS evidence, the original immigration judge hearing the case was abruptly removed from the case, and a new immigration judge, Immigration Judge Tara Naselow-Nahas, was installed. *See* Waldron Decl. ¶ 17–20.

75. On November 16, 2021, the immigration judge issued an oral decision on Mr. Ameen's removability. *See id.* ¶ 23.

76. In removal proceedings, the government bears the burden by clear, unequivocal, and convincing evidence of proving that the non-citizen is removable. *See Woodby v. INS*, 385 U.S. 276 (1966).

77. The immigration judge found that the government had failed to prove its allegations related to Mr. Ameen's involvement in terrorism by clear and convincing evidence and declined to sustain them. *See* Waldron Decl. ¶ 23.

78. However, the immigration judge found that the government had met its burden with respect to several misstatements on Mr. Ameen's refugee application, including statements related to how his father died, his brother Bilal's kidnapping, and his lack of interactions with or knowledge of a member or an armed group or militia. *See id.*

79.     Because the immigration judge found Mr. Ameen removable, she set new hearing dates in January and February 2022 at which the court will consider Mr. Ameen's claims for relief, including asylum, withholding of removal, deferral of removal under the Convention Against Torture, and adjustment of status. *See id.*

80.     Mr. Ameen is eligible for these forms of relief because the court did not sustain the government's allegations related to Mr. Ameen's involvement in terrorism.

81.     Regardless of the outcome of Mr. Ameen's claims for relief, there will likely be months or years of appeals after the removal proceedings have concluded.

**IV. Mr. Ameen's Bond Proceedings**

82.     Mr. Ameen filed a motion for custody redetermination on December 2, 2021. Waldron Decl. at ¶ 24.

83.     In support of his application for bond, Mr. Ameen's counsel filed a brief in which they argued that because the immigration judge had not sustained the terrorism-related charges, that Mr. Ameen was held pursuant to 8 U.S.C. § 1226(a) and thus was eligible for bond. The brief also argued that the burden should be on the government to show, by clear and convincing evidence, that Mr. Ameen was a danger to the community or a flight risk.

84.     Mr. Ameen submitted extensive evidence at the bond hearing supporting his argument that he was neither a danger to the community nor a flight risk. *See* Waldron Decl. ¶ 25; *see also* Exh. A.

85.     Mr. Ameen submitted numerous declarations from family and friends from Iraq attesting that Mr. Ameen was not involved in terrorism, including declarations

1   from five of his brothers disavowing that Mr. Ameen had ever been a member

2   of ISIS or Al-Qaida. *See* Exh. B at 815–52.

3   86.   In addition, his wife and children wrote letters of support asking for Mr.

4   Ameen's release. *See* Exh. A at 76–84.

5   87.   Mr. Ameen demonstrated significant community support, including from the

6   Mayor of Sacramento, various Sacramento City Councilmembers, and other

7   members of the Sacramento community. *See id.* at 58–75. On May 3, 2021,

8   Mayor Darrell Steinberg, Vice Mayor Jay Schenirer, and four City

9   Councilmembers of the City of Sacramento wrote to DHS Secretary Alejandro

10   Mayorkas to express their grave concern over ICE's detention and prosecution

11   of Mr. Ameen. *Id.* at 64–66.

12   88.   Recognizing that the Court found Mr. Ameen removable from the United States

13   based on material misrepresentations in his refugee application, Sacramento

14   Mayor Steinberg and City Councilmembers Valenzuela, Loloee, Guerra, and

15   Vang provided updated letters to nevertheless express their continued support of

16   Mr. Ameen and to request his release from custody. *See id.* at 58–63.

17   89.   Additionally, State of California Congresspeople Dr. Richard Pan and Kevin

18   McCarty wrote letters expressing their concern over his continued detention. *Id.*

19   at 67–68. Alianza Sacramento, Sacramento Immigration Coalition, Coalition for

20   Immigrant Detention Reform, and Step Up! Sacramento also supported the

21   release of Mr. Ameen back to their community, noting he is a beloved

22   community member and father. *Id.* at 69–75.

23

24

90. Other letters of support from community members described Mr. Ameen as kind, dedicated to his family, and a person of great moral character. *Id.* at 73, 85–114.

91. In response, the government filed an opposition in which it argued that Mr. Ameen was not eligible for bond under 8 U.S.C. § 1226(c)(1)(D) and submitted the LHMs as well as other evidence from the contested removal proceedings as support. *See* Exh. D at 1305–06. It further argued that even if Mr. Ameen were eligible for bond, his request should be denied because he was a danger to the community and a flight risk.

92. At the bond hearing on December 10, 2021, the immigration judge first concluded that Mr. Ameen was eligible for bond under 8 U.S.C. § 1226(a). Waldron Decl. ¶ 27.

93. However, she concluded that Mr. Ameen, not the government, had the burden of proof, reasoning that the bond hearing was an initial bond hearing at which the non-citizen bears the burden of proof under 8 U.S.C. § 1226(a). She also dismissed Mr. Ameen's argument that the burden had shifted because his detention had become prolonged, stating simply "this is not a prolonged detention case" because Mr. Ameen had not previously requested a bond hearing. *Id.*

94. The immigration judge further found that Mr. Ameen had not met his burden of showing by clear and convincing evidence that he was not a danger to the community and a flight risk. On dangerousness, she relied on allegation five in the Notice to Appear. *See* Exh. C at 1291.

95. On flight risk, she concluded that because he had outstanding warrants in Iraq, he had reason to abscond from law enforcement. Waldron Decl. ¶ 27.

96. Mr. Ameen filed an appeal with the BIA that day. Waldron Decl. ¶ 28. On December 23, 2021, the BIA issued a briefing schedule ordering the parties to file briefs on or before January 13, 2022. *Id.* ¶ 29.

97. As a result of Mr. Ameen's bond appeal, the immigration judge issued a bond memorandum on December 17, 2021, detailing her decision denying Mr. Ameen's request for bond. Exh. D.

98. The immigration judge concluded that Mr. Ameen bore the burden of proving by clear and convincing evidence that he was not a danger or a flight risk, citing *Matter of Guerra*, 24 I&N Dec. 37, 38 (BIA 2006) and *Matter of Adeniji*, 22 I&N Dec. 1102 (BIA 1999). Exh. D at 1307.

99. The immigration judge stated that she was persuaded by evidence that Mr. Ameen interacted with individuals associated with terrorist organizations. Specifically, she found that it was clear that Mr. Ameen interacted with his cousin Ghassan, who she concluded is a member of a terrorist organization. *Id.* at 1308. In making this finding, the immigration judge afforded significant weight to evidence from DHS and little weight to evidence from Mr. Ameen.

100. The immigration judge also concluded that Mr. Ameen could not prove that he was not a flight risk. *Id.* at 1309. She concluded that the fact that he had lied on his refugee application "suggests he will be unwilling to comply with this Court's order." *Id.* She further found that because of the outstanding warrants for his arrest in Iraq, he was likely to flee and evade removal to Iraq. *Id.*

101. Mr. Ameen has now been detained by ICE for over eight months and by the federal government, through coordinated efforts, for over three years without ever being charged with a crime.

## LEGAL ARGUMENT

**I. The Immigration and Nationality Act Places the Burden of Proof on the Government in Bond Hearings Under 8 U.S.C. § 1226(a)**

102. Congress has authorized the government to detain noncitizens during their removal proceedings. *See generally Jennings*, 138 S. Ct. 830 (discussing authority to detain under 8 U.S.C. §§ 1225(b), 1226(a), 1226(c)). The general "discretionary" detention statute, § 1226(a), enables noncitizens like Mr. Ameen to seek release on bond from an immigration judge.

103. Although 8 U.S.C. § 1226(a) is silent as to which party carries the burden of proof in bond proceedings, the statutory context and legislative history of that provision demonstrate that the government properly bears the burden of justifying a noncitizen's continued detention.

104. Had Congress wanted noncitizens to bear the burden of proof pursuant to § 1226(a) it would have expressly said so, as it did in another subsection of § 1226. *See* § 1226(c)(2) ("The Attorney General may release an alien" if release is "necessary to provide protection to a witness" and "the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other person or of property and is likely to appear for any scheduled proceedings").

105. "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or

exclusion." *Nken v. Holder*, 556 U.S. 418, 430 (2009) (quoting *INS v. Cardoza-Fonseca*, 480 U.S. 421, 432 (1987)).

106. This is "particularly true" in instances, like here, when Congress enacts a statute "as part of a unified overhaul" of the prior law. *Id*. at 430–31. Congress enacted all of § 1226 at the same time, in 1996. *See Demore*, 538 U.S. at 521 (describing "wholesale reform" of immigration laws including enactment of § 1226). Nonetheless, § 1226(a) is silent as to the burden of proof, while § 1226(c)(2) squarely places the burden on noncitizens to establish that release is proper. Congress's failure to expressly require noncitizens to carry the burden in bond hearings under § 1226(a) when it overhauled the INA indicates that placing the burden on non-criminal detainees contravenes Congressional intent.

107. Moreover, maxims of statutory construction dictate that "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons*, 434 U.S. 575, 580 (1978). That canon applies here: at the time that Congress enacted 8 U.S.C. § 1226(a), the BIA had expressed a strong presumption against detention under § 1226(a)'s predecessor statute, 8 U.S.C. § 1252(a)(1) (1994). *Matter of Patel*, 15 I&N Dec. 666, 666 (BIA 1976) (noting an immigrant "generally is not and should not be detained or required to post bond except on a finding that he is a threat to the national security or [] a poor bail risk").

108. When Congress preserved the language of former § 1252(a)(1) (1994) in re-enacting it as § 1226(a), it presumably adopted the Board's "administrative []

interpretation" of the statute and thereby *Patel*'s presumption against detention during removal proceedings. *Lorillard*, 434 U.S. at 580.

## II. The Due Process Clause Requires the Government to Bear the Burden of Proof By Clear and Convincing Evidence in Bond Hearings Under 8 U.S.C. § 1226(a)

109.    Mr. Ameen has been detained by ICE for more than eight months, rendering his detention prolonged and raising serious constitutional concerns. *See Zadvydas*, 533 U.S. at 701; *Demore*, 538 U.S. at 529–531.

110.    It is a long-standing constitutional principle of due process that if the government seeks to subject an individual to prolonged detention, the government bears the burden of proving by clear and convincing evidence that the individual meets the criteria for detention. *See, e.g.*, *Foucha v. Louisiana*, 504 U.S. 71, 72 (1992) ("[T]he State may confine a person if it shows by clear and convincing evidence that he is mentally ill and dangerous.") (citing *Jones v. United States*, 463 U.S. 354, 362 (1983)); *Kansas v. Hendricks*, 521 U.S. 346, 353 (1997) (placing the burden on the state in sexual predator civil detention scheme); *United States v. Salerno*, 481 U.S. 739, 750 (1987) (holding that government bears the burden in the pretrial detention context).

111.    The Ninth Circuit has held that in prolonged detention hearings under 8 U.S.C. § 1226(a), the government bears the burden by clear and convincing evidence of proving that the non-citizen is a danger to the community and a flight risk. *Singh v. Holder*, 638 F.3d at 1203; *see also Velasco Lopez v. Decker*, 978 F.3d 842, 853–56 (2d Cir. 2020).

112.    Even if Mr. Ameen's detention is not considered prolonged, the Due Process Clause requires that the burden be placed on the government by clear and convincing evidence, despite the immigration judge's decision and BIA precedent to the contrary.

**A.**    **Mr. Ameen's detention is prolonged and *Singh*'s holding on burden of proof in prolonged detention cases is controlling precedent in Mr. Ameen's removal proceedings.**

113.    *Singh v. Holder* clearly held, in the context of *Casas-Castrillon* hearings, that once immigration detention becomes prolonged, a clear and convincing evidence standard of proof applies to the government. *Singh*, 638 F.3d at 1203.

114.    In *Casas-Castrillon v. DHS*, 535 F.3d 942 (9th Cir. 2008), the Ninth Circuit held that non-citizens originally detained under 8 U.S.C. § 1226(c) are no longer subject to mandatory detention once the proceedings before the administrative agency have concluded and the case is before the circuit court of appeals. *Id.* at 948. At that point, their detention becomes authorized under 8 U.S.C. § 1226(a). The Ninth Circuit further concluded that a bond hearing under 8 U.S.C. § 1226(a) was required, particularly in light of the prolonged nature of the detention. *Id.* at 950, 951.

115.    After *Casas-Castrillon*, the Ninth Circuit decided *Singh v. Holder*, in which it held that the government bears the burden of demonstrating, by clear and convincing evidence, that an "alien is a flight risk or a danger to the community" to justify a denial of bond at a *Casas* hearing. *Singh*, 638 F.3d at 1203, 1205.

116. In *Singh v. Holder*, the Ninth Circuit based its decision to impose a clear and convincing evidence standard on the government on the fact that detention had become prolonged. *See Cruz-Zavala v. Barr*, 445 F. Supp. 3d 571, 576 (N.D. Cal. 2020) (holding that *Singh* applied even when non-citizen did not request bond at the beginning of his removal proceedings); *see Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011).

117. Unlike *Casas-Castrillon*, "*Singh* was not a statutory construction decision. Instead, [the Ninth Circuit] drew from the Supreme Court's constitutional procedural due process jurisprudence 'plac[ing] a heightened burden of proof on the State in civil proceedings in which the 'individual liberty interests at stake . . . are both particularly important and more substantial than mere loss of money.'" *Aleman Gonzalez v. Barr*, 955 F.3d 762, 775 (9th Cir. 2020), *cert. granted on other grounds*, *Garland v. Gonzalez*, 210 L. Ed. 2d 1009 (Aug. 23, 2021).

118. In *Jennings*, the Supreme Court rejected the Ninth Circuit's interpretation of 8 U.S.C. § 1226(a). *Aleman Gonzalez v. Barr*, 955 F.3d at 775. However, it remanded for consideration of the constitutional issues presented in the case. *Jennings*, 138 S.Ct. at 852.

119. Because *Singh* was a constitutional decision and *Jennings* did not consider any constitutional claims, *Singh* has not been abrogated and is still controlling precedent. *See Ixchop Perez v. McAleena*n, 435 F. Supp. 3d 1055, 1060-61 (N.D. Cal. 2020) (finding that *Jennings* did not abrogate *Singh*); *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1147 (N.D. Cal. 2018) (same); *Gonzalez v.*

1    *Bonnar*, 18-CV-05321-JSC, 2019 WL 330906, at *6 (N.D. Cal. Jan. 25, 2019)

2    (same).

3    120.    Contrary to *Singh*, the immigration judge in this case did not put the burden on

4            the government to prove that Mr. Ameen was a danger to the community or a

5            flight risk by clear and convincing evidence.

6    121.    Instead, she concluded that although "the courts have found certain classes of

7            noncitizens who have been subject to prolonged or indefinite detention to be

8            eligible for bond redetermination where the burden is placed on DHS," this case

9            law did not apply to Mr. Ameen because "his eligibility for a bond falls squarely

10           under [8 U.S.C. § 1226(a)], not the aforementioned case law." Exh. D at 1307,

11           n. 2. This conclusion is wrong for at least two reasons.

12   122.    First, the immigration judge ignored *Singh*, which requires that the burden of

13           proof shift to the government to demonstrate flight risk and dangerousness by

14           clear and convincing evidence in prolonged detention cases for non-citizens

15           held under 8 U.S.C. § 1226(a). As explained above, that decision survived the

16           Supreme Court's decision in *Jennings*. 138 S.Ct. at 852. The holding of *Singh*

17           has also been affirmed in other circuits. *See, e.g.*, *Velasco Lopez*, 978 F.3d at

18           846 (holding that the government bears burden of proof in prolonged detention

19           cases under 8 U.S.C. § 1226(a)).

20   123.    Second, the immigration judge misunderstood the case law on prolonged

21           detention in other contexts. The constitutionality of prolonged detention does

22           not depend on the statute that authorizes the detention, but on the fact that it is

23           prolonged. The Supreme Court has repeatedly held that the government must

24

bear the burden by clear and convincing evidence when it seeks to subject an individual to prolonged civil detention, and it has done so under a variety of statutory schemes. *See, e.g., Foucha*, 504 U.S. at 86 ("[I]n civil commitment proceedings the State must establish the grounds of insanity and dangerousness permitting confinement by clear and convincing evidence.") (citing *Addington v. Texas*, 441 U.S. 418, 425–33 (1979)); *Hendricks*, 521 U.S. at 353 (burden on the state in sexual predator prolonged detention scheme).

124. There is nothing unique about detention under 8 U.S.C. § 1226(a) that would affect the constitutionality of the procedural safeguards due to Mr. Ameen. Detention under 8 U.S.C. § 1226(a) is functionally identical to immigration detention pursuant to other statutes. Non-citizens are held in the same facilities and subject to the same conditions. The liberty interests are identical and the government's interests are no greater. If anything, the government's interests are lesser because non-citizens, like Mr. Ameen, held under 8 U.S.C. § 1226(a) do not have serious criminal convictions.

125. Thus, the immigration judge's conclusion that Mr. Ameen could either be subject to 8 U.S.C. § 1226(a) or prolonged detention—but not both at the same time—is simply incorrect.

126. Mr. Ameen is entitled to a hearing at which the burden is on the government by clear and convincing evidence because his detention is prolonged, regardless of which statute authorizes his detention.

**B.      The Due Process Clause requires the government to bear the burden by clear and convincing evidence even if Mr. Ameen's detention is not considered prolonged.**

127.     Even if Mr. Ameen's detention is not considered prolonged, the Due Process Clause still requires that the burden of proof be placed on the government by clear and convincing evidence.

128.     Immigration detention is inconsistent with due process unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Zadvydas*, 533 U.S. at 690 (quoting *Hendricks*, 521 U.S. at 356)).

129.     The government's interest in protecting the community and avoiding flight risk is no greater at an initial hearing under 8 U.S.C. § 1226(a) than it is once the non-citizen has been detained for a prolonged period of time.

130.     Courts use the three-part balancing test articulated in *Mathews v. Eldridge* to determine when additional procedural protections are required under the Due Process Clause. 424 U.S. 319, 335 (1976) (noting that courts must balance (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail").

131.     The *Mathews* factors weigh in favor of placing a high burden on the government to detain a non-citizen during the pendency of removal proceedings. This is no less the case at an initial bond hearing than in the prolonged detention context.

132.    Detention subjects a non-citizen to a substantial deprivation of liberty.

*Zadvydas*, 533 U.S. at 690 (citing *Foucha*, 504 U.S. at 80).

133.    The risk of erroneous deprivation is high. The result in this very case illustrates

the danger of placing the burden of proof on the non-citizen to prove a

negative—that he is not a flight risk or danger to the community. *See*

*Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021) ("[P]roving a negative

(especially a lack of danger) can often be more difficult than proving a cause for

concern.") (citing *Elkins v. United States*, 364 U.S. 206, 218 (1960)).

134.    The burden on the government to bring forth evidence proving flight risk and

danger to the community, on the other hand, is slight. The government will

submit all the evidence it has even if the burden is placed on the non-citizen.

For example, in Mr. Ameen's case, there is no indication that the government

held back evidence it otherwise would have submitted because it did not have

the burden. Doing so would have been nonsensical given its failure to prove its

terrorism allegations against Mr. Ameen and the desperate measures it has taken

to keep Mr. Ameen in detention.

135.    Thus, the Due Process Clause requires that the government prove by clear and

convincing evidence that the non-citizen is a flight risk or a danger to the

community even at the initial bond hearing. *See Al-Sadeai v. U.S. Immigr. &*

*Customs Enf't*, 21-CV-00296-GPC-MDD,2021 WL 1978474, at *5 (S.D. Cal.

May 18, 2021) (finding that the burden of proof is on the government "at the

time of their initial bond hearing"), *appeal filed at Al-Sadeai v. U.S. Immigr. &*

*Customs Enf't*, Case No. 21-55747 (9th Cir. July 16, 2022); *Ixchop Perez*, 435

F. Supp. 3d at 1061–62 (applying the *Singh* burden of proof allocation to Section 1226(a) initial bond hearing); *Cruz-Zavala*, 445 F. Supp. 3d at 576 (same); *Marroquin Ambriz v. Barr*, 420 F. Supp. 3d at 964 (same); *Hernandez-Lara v. Lyons*, 10 F.4th at 41 (holding that the government bears the burden of proving *either* dangerousness by clear and convincing evidence *or* flight risk by a preponderance of the evidence); *Darko v. Sessions*, 342 F. Supp. 3d 429, 436 (S.D.N.Y. 2018) (holding that "due process requires the government to bear the burden of proving that detention is justified at a bond hearing under § 1226(a)" and that "in accordance with the overwhelming majority of courts to have decided the issue… the government must bear the burden by clear and convincing evidence"); *Rajesh v. Barr*, 420 F.Supp.3d 78, 87 (W.D.N.Y. 2019) (holding that "the Fifth Amendment's Due Process Clause requires the Government to bear the burden of proving, by clear and convincing evidence, that detention is justified at a bond hearing under § 1226(a)" and noting that the court joins "the vast majority of the district courts" in doing so).

**III. The Immigration Judge Erred in Unevenly Applying Evidentiary Rules Resulting in a Fundamentally Unfair Hearing**

136.    Mr. Ameen received a fundamentally unfair hearing because the immigration judge afforded greater evidentiary weight to DHS's evidence, which suffered from substantial evidentiary flaws, than to Mr. Ameen's evidence. In her evidentiary findings, the immigration judge awarded the government preferential treatment.

137.    For example, the immigration judge afforded "little weight" to the sworn declarations from Mr. Ameen's brothers because they "have also been accused

1    of having connections to terrorist activities." *See* Exh. D at 1308; *see also* Exh.

2    B at 815-38.

3    138.    However, the only such allegations against Mr. Ameen's brothers are found in

4           the May 26, 2020 LHM, a document that is based on multiple layers of hearsay,

5           including statements from unnamed witnesses. *See* Waldron Decl. ¶ 10. Mr.

6           Ameen's federal defender in his extradition case, who extensively reviewed the

7           government's evidence in both the extradition case and the immigration case,

8           noted that the FBI used different aliases for the same unnamed witnesses in its

9           August 14, 2018 search warrant affidavit versus its May 26, 2020 LHM. *See*

10          Exh. B at 853–65. She further observed that, alarmingly, "much of the of the

11          exculpatory evidence favorable to Mr. Ameen and impeaching information

12          adverse to the witnesses from the search warrant affidavit has been omitted

13          from DHS's filings to the [Immigration] Court, as well as from the . . . LHM."

14          *Id.* at 855. She noted her surprise that "neither of these documents provided

15          anything close to a full discussion of the facts of Mr. Ameen's case and the

16          investigation underlying it." *Id.*

17   139.    The immigration judge also faulted Mr. Ameen for foundational deficits with

18          respect to the declarations from Mr. Ameen's family members and individuals

19          in Iraq while simultaneously failing to acknowledge the government's failure to

20          authenticate or lay a foundation for information obtained through unnamed

21          witnesses in the LHM. *See* Exh. D at 1305–09. In so doing, the immigration

22          judge played favorites, giving the government a pass for its evidentiary

23          shortcomings but punishing Mr. Ameen for his.

24

140. For example, in support of her decision to give little weight to the declarations, the immigration judge stated that the court did not have the opportunity to question the declarants. *Id.* at 1308. Yet the immigration judge failed to note that the court also had no opportunity to question any of the nine unnamed individuals who made allegations against Mr. Ameen and his family as relayed in the May 2020 LHM. *See* Exh. D.

141. In another foundational critique, the immigration judge faulted Mr. Ameen for not detailing his connection to those individuals who provided declarations on his behalf or describing how he obtained the declarations from his brothers and Hamid Khaleel and Haqi Rajab Yas. Exh. D at 1308. However, the declarations all make clear the declarants' connections to Mr. Ameen and include photo identification, further authenticating the documents. Exh. B at 815-38. By contrast, the government's evidence had significant chain of custody issues that the immigration judge chose to overlook.

142. Immigration judges must fully consider the complete record before reaching a bond determination. *Ramos v. Sessions*, 8-CV-00413-JST, 2018 WL 905922, at *4 (N.D. Cal. Feb. 15, 2018) (finding that the government did not establish dangerousness or flight risk by clear and convincing evidence where the immigration judge glossed over evidence of the petitioner's rehabilitation and thus had not adequately considered the whole record); *see also Sales v. Johnson*, 323 F. Supp. 3d 1131, 1142 (N.D. Cal. 2017) ("[B]ased on th[e] record, the government's evidence did not establish clearly and convincingly that Petitioner was a poor bail risk.").

143.   The immigration judge failed to consider the whole record by applying more stringent evidentiary requirements on Mr. Ameen and, as a result, failing to afford his evidence appropriate weight while crediting the government's evidence that suffered from significant evidentiary issues.

144.   Likewise, the immigration judge failed to fully consider the extensive new evidentiary submission in support of Mr. Ameen's bond request. *See* Exh. D; Exh. B. The bond memo cursorily mentions the submission in the discussion on flight risk without discussing the documents specifically or the content thereof, and wholly fails to discuss them in the dangerousness section. *See* Exh. D at 1309.

145.   The immigration judge's failure to afford Mr. Ameen's evidence appropriate weight, as well as her consideration of evidence favorable to the government's claims rife with even greater flaws, rendered the bond hearing fundamentally unfair under the Due Process Clause.

**IV. Mr. Ameen is Not a Danger to the Community or a Flight Risk Under Any Burden of Proof**

146.   The government has failed to prove that Mr. Ameen is a danger to the community or a flight risk.

147.   Because no reasonable decision-maker could conclude that Mr. Ameen is a danger to the community or a flight risk, the Court should order his immediate release.

**A.    Mr. Ameen is not a danger to the community.**

148.   The immigration judge already concluded that the government failed to meet its burden of proof on all of the terrorism allegations in the removability context.

The government submitted the same evidence in its opposition to custody redetermination.

149.   The sole charges of removability that the immigration judge sustained concern alleged misrepresentations made on Mr. Ameen's refugee application.

150.   Even if the charge is ultimately sustained on appeal, the immigration judge failed to articulate how making misrepresentations on a refugee application would render Mr. Ameen so dangerous as to require his continued detention during the pendency of his removal proceedings.

151.   Although the burden is on the government to prove that Mr. Ameen is dangerous, he should prevail even if the burden is placed on him.

152.   Mr. Ameen has no criminal convictions and has never been charged with a crime in the United States. The warrant for his arrest at issue in the extradition proceedings was found not to be supported by the relatively low standard of probable cause.

153.   Mr. Ameen has submitted copious evidence to show that he is not involved in terrorism in Iraq and that he is a cherished member of his family and community in Sacramento. He also has spent over three years exposing the government's evidence for what it is: false information given to the government by unscrupulous and not credible informants.

154.   Mr. Ameen lived in the United States for nearly four years before his arrest. The government executed a search warrant on his residence and the contents and search history on his computer. The government found no compelling evidence of any terrorist activity on the part of Mr. Ameen.

155.    Moreover, the government cannot explain why Mr. Ameen, who has never

        engaged in terrorist activities in the past, would choose to begin engaging in

        terrorist activities now when he knows that the government is surveilling him—

        after not making any such efforts in the years prior to his incarceration when he

        had no knowledge of his surveillance.

156.    The government has presented no evidence whatsoever that he has ever posed a

        threat to the United States prior to or after his admission.

157.    No reasonable decision-maker could conclude that Mr. Ameen is a danger to the

        community considering the correct burden of proof and the immigration judge's

        decision on removability.

**B.      Mr. Ameen is not a flight risk.**

158.    The immigration judge failed to appropriately weigh the evidence of record

        when considering whether Mr. Ameen is a flight risk. Mr. Ameen has lived in

        the United States for over seven years, since November 4, 2014. *See* Exh. A at

        41–43. Before he was arrested on August 15, 2018, Mr. Ameen worked to

        support his family, filed tax returns, and attended community college classes to

        learn English and professional skills. *See* Exh. A at 20–36, 49.

159.    Upon release from custody he would return to his family's home in Sacramento.

        Mr. Ameen will live with his wife and four children, ages 17 to 4 years old. Mr.

        Ameen's wife and three older children are refugees, and his youngest child,

        J.A., is a United States citizen. *See id.* at 39–43.

160.    In addition to his stable, supportive family and residence, he has significant

        community support.

161. All who have met and know Mr. Ameen speak of his kind, respectful, and gentle nature. *See id.* at 85–114.

162. Mr. Ameen has no history of absconding or failing to appear at court dates. Additionally, evidence shows that while Mr. Ameen resided in Turkey, he complied with stringent refugee reporting requirements mandated by the Turkish government. *See* Exh. B at 931–53.

163. In the bond memorandum, the immigration judge relied heavily on the outstanding warrants for Mr. Ameen's arrest in Iraq to conclude that Mr. Ameen had incentive to flee in order to avoid removal to Iraq. *See* Exh. D at 1309. However, once again, the immigration judge affords the government's evidence, which suffers from serious evidentiary flaws like authentication and foundation, significant weight while failing to consider evidence and arguments put forth by Mr. Ameen. Mr. Ameen's evidence highlights corruption within the government of Iraq, including within the judiciary, and his arguments demonstrate the U.S. government failed to prove Iraqi law as a fact as required by law. *Matter of Soleimani*, 20 I&N Dec. 99, 106 (BIA 1989) ("Foreign law is a matter to be proven by the party seeking to rely on it."); *Matter of Kodwo*, 24 I&N Dec. 479, 482 (BIA 2008); *Matter of A-G-G-*, 25 I&N Dec. 486, 505, n. 19 (BIA 2011). The warrants also contain no description of the alleged violation of law by Mr. Ameen. The "description" section on each warrant is either blank or "as described by the informer," further undermining any potential evidentiary value that the warrants might have. Because the government has not proven the validity of the warrants and there is reason to doubt their veracity, there is no

1    support for the contention that Mr. Ameen would be incentivized to flee to

2    avoid removal.

3    164.   Also in the bond memorandum, the immigration judge concluded that

4    "[r]espondent's demonstrated willingness to provide false information to the

5    government suggests he will be unwilling to comply with this Court's orders."

6    Exh. D at 1309. However, the record as discussed *supra* does not support that

7    finding.

8    165.   Mr. Ameen does not want to be returned to Iraq and needs to press his claims

9    for relief from removal in order to avoid that fate. Absconding would be

10   completely counterproductive to Mr. Ameen's ultimate goal of remaining safely

11   in the United States with his family.

12   166.   Furthermore, even if the government could show by clear and convincing

13   evidence that Mr. Ameen poses some risk of flight, his detention would remain

14   impermissible if a condition or combination of conditions could mitigate that

15   risk.

16   167.   The immigration judge noted that she was required to consider alternatives to

17   detention, but then failed to do so. In particular, she failed to explain why Mr.

18   Ameen's alleged unwillingness to comply with court orders could not be

19   mitigated by electronic monitoring or other conditions of release.

20   168.   The government has not met its burden of showing that Mr. Ameen is a flight

21   risk by clear and convincing evidence. Even if the burden is on Mr. Ameen, he

22   has proven that he is not a flight risk through his evidence of family and

23   community ties.

24

1

**IV. This Court Should Grant Mr. Ameen's Immediate Release or, in the Alternative, Order a New Bond Hearing**

2

3    169.    This Court should order Mr. Ameen's immediate release because no reasonable

4            decision-maker could conclude that the government has met its burden of

5            showing that Mr. Ameen is a danger to the community or a flight risk. In

6            addition, Mr. Ameen will never receive a full and fair hearing before the

            Department of Justice.

7

8    170.    It would be futile for this Court to order the immigration judge to conduct a new

9            bond hearing using the correct burden of proof.

10   171.    The immigration judge already concluded that the government could not meet

11           its burden with respect to the factual allegations that implicate danger to the

            community.

12

13   172.    No reasonable decision-maker could conclude that the government has proven

14           that Mr. Ameen is a flight risk. Any risk of flight can be mitigated with a bond,

            electronic monitoring, and other conditions of release.

15

16   173.    Thus, Mr. Ameen requests that this Court order his immediate release on

17           conditions the Court deems reasonable and necessary.

18   174.    In the alternative, Mr. Ameen requests that the Court order a new bond hearing

19           with the correct burden of proof.

20   175.    At this bond hearing, the Court should instruct the immigration judge to

21           consider all of the evidence in the bond record.

22   176.    In addition, the Court should instruct the immigration judge to equally apply

23           laws governing admissibility and weight of evidence to both parties.

24

177.    Furthermore, this Court should instruct the immigration judge to consider alternatives to detention in her new determination on flight risk as required by the Due Process Clause.

## CLAIMS FOR RELIEF

## DUE PROCESS CLAUSE – FIFTH AMENDMENT

178.    Petitioner reasserts and incorporates by reference each and every allegation in the previous paragraphs.

179.    Petitioner's right to procedural due process was violated when the immigration judge put the burden of proof on him at his bond hearing rather than requiring the government to prove he was a danger to the community or a flight risk by clear and convincing evidence.

180.    Petitioner's right to due process was violated when the immigration judge held his evidence to a higher standard than the government's evidence.

181.    Petitioner's right to due process was further violated because the immigration judge did not consider alternatives to detention as required by the Due Process Clause.

## IMMIGRATION AND NATIONALITY ACT 8 U.S.C. § 1226(a)

182.    Petitioner realleges and incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

183.    The immigration judge's requirement that Mr. Ameen carry the burden of proof in his initial bond hearing violated § 1226(a) because it contravened Congressional intent in drafting the statute, which explicitly places the burden on the noncitizen under § 1226(c)(2) but not § 1226(a).

184.  Congress is presumed to know of agency interpretations of statutes when drafting. By replacing former § 1252(a)(1) with the nearly identical §1226(a), Congress adopted the presumption against detention established by the Board of Immigration Appeals.

185.  The immigration judge therefore erred when she required Mr. Ameen to bear the burden of proof in his § 1226(a) bond hearing because to do so was in violation of the statute. The immigration judge also committed legal error in the flight risk and dangerousness determinations.

## PRAYER FOR RELIEF

WHEREFORE, the Petitioner asks this Court:

186.  To assume jurisdiction over this matter;

187.  Order Mr. Ameen released on conditions of release deemed appropriate and necessary by the Court;

188.  In the alternative, order the immigration judge to conduct a new constitutionally adequate bond hearing;

189.  Award attorneys' fees and costs pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412; and

190.  Grant other relief as the Court deems just and proper under the law.

Dated: January 10, 2022

Respectfully Submitted,

/s/ Ilyce Shugall

ILYCE SHUGALL

Petition for Writ of Habeas Corpus                38

ilyce@ild.org
SIOBHAN WALDRON
siobhan@ild.org
IMMIGRANT LEGAL DEFENSE
1322 Webster St #300,
Oakland, CA 94612
Tel: (415) 758-3765

A. NICOLE HALLETT (*pro hac vice* pending)
        Supervising Attorney
Elise LeCrone
Brad Posdal
Alice Thompson
        Law Student Interns

nhallett@uchicago.edu
EDWIN F. MANDEL LEGAL AID CLINIC
6020 S. University Ave.
Chicago, IL 60637
Tel: (203) 910-1980

*Counsel for Petitioner*

## **<u>VERIFICATION</u>**

I, Ilyce Shugall, declare under penalty of perjury that, on information and belief, the factual statements in the foregoing Petition for Habeas Corpus are true and correct.

/s/ Ilyce Shugall
_____
