UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ABDULSATTAR AMEEN,<br><br>    Plaintiff,<br><br>    v.<br><br>DAVID JENNINGS, et al.,<br><br>    Defendants. | Case No. 22-cv-00140-WHO<br><br>**ORDER DENYING MOTION TO DISMISS AND GRANTING IN LIMITED PART WRIT OF HABEAS CORPUS** |

Petitioner Omar Abdulsattar Ameen filed a Petition for a Writ of Habeas Corpus in this court on January 10, 2022, arguing that his December 10, 2021 bond hearing before an Immigration Judge ("IJ") was constitutionally and procedurally deficient. Dkt. No. 1. Ameen asks me to order his release from detention pending the final resolution of his extradition proceedings or, in the alternative, to order the government to provide a constitutionally sufficient bond hearing.

Respondents[1] filed a motion to dismiss along with their Return, arguing that I lack jurisdiction to hear Ameen's Petition under 28 U.S.C. § 2241. Dkt. No. 21. Respondents contend that jurisdiction must be located only in the Eastern District of California, the jurisdiction where Ameen is confined by ICE. Ameen opposes the motion to dismiss and in his Traverse identifies why he is entitled to habeas relief. Dkt. No. 22.

On April 13, 2022, I held a hearing to address both the motion to dismiss and substantive

---

[1] Named Respondents are Merrick Garland (the Attorney General of the United States); Alejandro Mayorkas (Secretary of the Department of Homeland Security ("DHS")); and David Jennings (the Director of the Immigration and Customs Enforcement ("ICE") Field Office in San Francisco). Jennings has been replaced by Polly Kaiser who is the Acting Field Office Director ("FOD"). Declaration of Nancy Gonzalez [Dkt. No. 17-1] ¶ 8. Kaiser, therefore, is substituted in for Jennings as the third respondent and I will refer to Kaiser as the San Francisco Acting FOD in lieu of Jennings.

grounds for habeas relief raised by Ameen. Given the particular facts of this case – including Ameen's detention in a private facility run under a contract controlled by the San Francisco ICE Field Office under respondent Kaiser – I agree with the reasoning of my colleagues in this District that I have jurisdiction over Ameen's Petition. The government's motion to dismiss is DENIED. I GRANT the Petition in limited part, requiring that respondents provide Ameen a constitutionally sufficient bond hearing – placing the burden of proof on the government to show by clear and convincing evidence that Ameen remains a flight risk or danger to the community – within 30 days of the date of this Order.

## BACKGROUND

Ameen has been in federal custody since 2018, when DHS instituted removal proceedings against him. His removal proceedings were stayed pending extradition proceedings that terminated in Ameen's favor in April 2021. Petition ¶¶ 4-5. In April 2021, he was transferred back to the custody of ICE and requested release from detention; he did not file a motion for custody redetermination until December 2021. Pet. ¶ 9; Declaration of Nikisha L. Scott [First Scott Decl., Dkt. No. 17-2], ¶ 14.

A bond hearing was held on December 10, 2021. The IJ issued an oral decision on that date and then issued a bond memorandum explaining the bases for her decision on December 17, 2021. First Scott Decl., ¶ 10; Pet. ¶ 12. The IJ determined, first, that she had authority to conduct a custody hearing under 8 U.S.C. § 1226(a), rejecting the government's argument that detention was mandatory under 8 U.S.C. § 1226(c). However, the IJ denied bond, finding that Ameen failed to meet his burden to prove he was neither a flight risk nor a danger to the community. Pet. ¶¶ 11-14. Ameen appealed the decision denying bond to the Board of Immigration Appeals ("BIA"), and the government cross-appealed on the issue of whether Ameen was entitled to a bond hearing in the first instance or whether detention was mandatory under Section 1226(c). As of the date of the hearing on this Petition, those appeals remain pending before the BIA.[2]

Ameen was and is currently detained at the Golden State Annex ("GSA"), a "contract

---

[2] At the hearing, both sides agreed that Ameen remains in detention under Section 1226(a).

detention facility located in McFarland, California, that is owned and managed by The GEO Group, Inc. ("GEO")," under a contract with ICE. Declaration of Nancy Gonzalez [Dkt. No. 17-1] ¶¶ 4, 6. Respondents contend that "oversight" over the GSA is provided "through various inspection processes by ICE and other entities," and that ICE Acting Assistant Field Office Director ("AFOD") Gonzalez – who works out of the Bakersfield "sub-office" – "liaises" with "the GSA Facility Administrator and other GEO personnel regarding the detainees at GSA." Gonzalez Decl., ¶¶ 1, 6. Gonzalez reports to Acting Deputy Field Office Director Moises Becerra ("Acting DFOD"), who is based in Fresno and assigned to the Fresno sub-office. *Id*. ¶ 7. Becerra reports to Acting Field Office Director Polly Kaiser, who is based in San Francisco and directs of all "activities and law enforcement operations located within the geographic boundaries of the San Francisco Area of Responsibility ('AOR'). San Francisco's AOR consists of the following offices located in the following geographic areas: San Francisco, CA; Morgan Hill, CA; Redding, CA; Sacramento, CA; Stockton, CA; Fresno, CA; Bakersfield, CA; Hawaii; Guam; and the Northern Mariana Islands." *Id*. ¶ 8.

Ameen contends – based on public records – that the contract between ICE and the GSA is entered into and ultimately controlled by Acting FOD Kaiser for the San Francisco AOR. Supplemental Declaration of Siobhan Waldron [Dkt. No. 22-1], ¶ 4 ("U.S. Immigration and Custom Enforcement's ('ICE's') website indicates that the Golden State Annex ('GSA') detention facility is governed by the San Francisco Field Office, and does not provide any contact information for the Bakersfield or Fresno sub-offices. The website directs all feedback and comments to be sent to the San Francisco Field Office at 630 Sansome Street Rm 590, San Francisco, CA 94111.").

On March 23, 2022, after Ameen filed the Petition, the IJ granted Ameen withholding of removal under the Convention Against Torture. Second Supplemental Declaration of Siobhan Waldron [Dkt. No. 28] ¶ 4.

In his habeas petition, Ameen contends that his initial bond hearing was procedurally and constitutionally deficient because the IJ put the burden of proof on him regarding flight risk and danger to the community instead of on the government. He also argues that the IJ erred in

unevenly applying evidentiary rules resulting in a fundamentally unfair hearing. According to Ameen, had the IJ appropriately considered the evidence of record she could not have concluded that he is either a danger to the community or a flight risk. Ameen asks me to order his immediate release or, in the alternative, a new procedurally and constitutionally sufficient bond hearing.

## DISCUSSION

### I. MOTION TO DISMISS/JURISDICTION

Respondents move to dismiss, arguing that this court does not have jurisdiction to determine the Section 2241 Petition because jurisdiction lies only in the Eastern District of California, the district of Ameen's confinement. They contend that jurisdiction here is foreclosed by the Supreme Court's decision in *Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004). There, in reviewing a habeas petition filed by a United States citizen detained by the Department of Defense pursuant to the President's determination that he was an "enemy combatant" who conspired with al Qaeda to carry out terrorist attacks in the United States, the Court addressed two questions: (i) did Petitioner "properly file his habeas petition in the Southern District of New York" when he was being held in a Naval Brig in Charleston, South Carolina; and (ii) did the President "possess authority to detain Padilla militarily." *Id*., 542 U.S. at 430. It only resolved the first.

The Court explained:

> In accord with the statutory language and [the] immediate custodian rule, longstanding practice confirms that in habeas challenges to present physical confinement - "core challenges" - the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official.

*Id*., 542 U.S. at 435. It explicitly stated that it did not reach and left open a question that had divided lower courts; "whether the Attorney General is a proper respondent to a habeas petition filed by an alien detained pending deportation." *Id*. at 436 n.8. The Court recognized both that the majority of courts applied "the immediate custodian rule and hold[] that the Attorney General is not a proper respondent" and that the Ninth Circuit held the contrary, that the Attorney General is a proper respondent. *Id*.

According to respondents, the *Padilla* majority nonetheless affirmed the "bright-line" rule

1  and noted that "the dissent cannot cite a single case in which we have deviated from the
2  longstanding rule we reaffirm today - that is, a case in which we allowed a habeas petitioner
3  challenging his present physical custody within the United States to name as respondent someone
4  other than the immediate custodian and to file somewhere other than the district of confinement."
5  *Id*. at 449–50.  Respondents contend that while the Court left open the question of whether the
6  Attorney General could be named as a respondent and the implications for jurisdiction, the Ninth
7  Circuit applied the bright-line rule from *Padilla* in an immigration context in *Lopez-Marroquin v.*
8  *Barr*, 955 F.3d 759 (9th Cir. 2020).  There, in a three-paragraph opinion, the Ninth Circuit
9  construed an emergency motion to remand pursuant to the All Writs Act in a non-citizen's appeal
10 from the BIA as a petition for a writ of habeas corpus.  It transferred the case to the Southern
11 District of California, the jurisdiction where the petitioner was being detained, citing the default
12 jurisdiction rule in *Padilla* as authority.  *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020).
13 The decision did not, however, analyze or expressly address the jurisdiction issue raised in this
14 case.

15 Respondents similarly cite a host of cases where the Ninth Circuit construed appeals from
16 IJ or BIA determinations as habeas petitions and then transferred them to districts where
17 petitioners were confined, many of them arising as motions for release because of the COVID-19
18 pandemic.  *See, e.g., Birru v. Barr,* No. 19-72758, 2020 WL 12182460, at *1 (9th Cir. Apr. 30,
19 2020) ("we construe petitioner's motion for release from detention as a petition for a writ of
20 habeas corpus and transfer it to the Eastern District of California, where petitioner is being held at
21 the Yuba County Jail"); *Singh v. Rosen*, 833 F. App'x 687, 688 (9th Cir. 2021) (noting in a
22 footnote that court had construed a different motion of petition ("motion for release from custody"
23 because of COVID-19) as a habeas petition and transferred it to the Middle District of Georgia
24 under 28 U.S.C. § 2241(b));  *Kumar v. Immigr. & Customs Enf't*, No. 20-72296, 2020 WL
25 12654777, at *1 (9th Cir. Aug. 20, 2020) ("Petitioner is detained in Louisiana, and it appears that
26 petitioner's immigration proceedings also took place in Louisiana.  To the extent petitioner seeks
27 to challenge his detention, he must file a habeas petition in the district court for the district in
28 which he is detained"); *Villalobos-Arellano v. Ashcroft*, 123 F. App'x 790, 791 & n. 1 (9th Cir.

5

2005) ("we construe Villalobos' petition for review as a petition for habeas corpus and order it transferred to the United States District Court for the Western District of Washington" noting transfer was "under the assumption that Villalobos is still being held by the Bureau of Immigration and Customs Enforcement in Seattle. Villalobos' habeas petition must be filed in his district of confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426 [] (2004)".).

None of those cases addresses why a particular jurisdiction was appropriate, much less a situation where the habeas petitioner is being held in a private facility operated under a government contract. In such a situation, there is not a typical "warden" who is traditionally named as the respondent in a habeas petition seeking release under Section 2254 or Section 2241. Nor did any of those cases address the situation where there is conceivably more than one appropriate jurisdiction, potentially the district of confinement (despite, as here, the absence of a warden who is an employee of the federal government or otherwise the person who may be directed to provide habeas relief) or the district where those in control of the contract for the private-detention facility are located (as here).

In other cases relied on by the respondents, the petitioners were from out of state. *See, e.g., Matias Sola v. Lynch*, No. 5:16-CV-02464-EJD, 2016 WL 11731264, at *1 (N.D. Cal. May 10, 2016) ("Petitioner is currently detained in Arizona, and, notably, all proceedings related to his detention have occurred there. Though the court recognizes this action has some peripheral connection to this district given the location of Petitioner's counsel and his family, their contacts do not supplant this action's strong connection to Arizona."); *Sankara v. Barr*, No. 19-CV-06306-SI, 2020 WL 9395225, at *1 (N.D. Cal. Feb. 10, 2020), *reconsideration denied*, No. 19-CV-06306-SI, 2020 WL 1139590 (N.D. Cal. Mar. 9, 2020) ("Here, [pro se] petitioner was in custody in Genesee County, located in the Western District of New York at the time he filed his habeas petition. The Western District of New York would have been the proper venue, but the Northern District of California was not and is not the proper venue for this action.").

Ameen persuasively argues that those cases are inapposite and do not control here. Kaiser (formerly Jennings), the ICE Acting Field Director Officer of the regional office that controls the independent contractor GSA, is the ultimate "custodian" of Ameen, making San Francisco the

appropriate jurisdiction in which to file this Petition. Given the clear chain of command, respondents' suggestion that a lower-level ICE office – one who reports to Kaiser but is located in a district office within the Eastern District of California – is not a sufficient substitute.[3] Ameen also notes that at least four judges in this District, in decisions from 2020 and 2021, have departed from the "district-of-confinement" rule and found jurisdiction in the Northern District despite the immigrant-petitioner being physically detained in the Eastern District.

For example, the Honorable James Donato rejected a jurisdictional challenge in a similar case, where the petitioner was detailed in an ICE facility under the authority of the San Francisco FOD. He noted:

> The Court has concluded in prior immigration habeas cases that the Northern District of California is an appropriate jurisdiction for petitions filed by aliens detained by the Director of the San Francisco ICE Field Office. *See Ahn v. Barr*, No. 20-CV-02604-JD, 2020 WL 2113678, at *2 (N.D. Cal. May 4, 2020); *Masood v. Barr*, No. 19-CV-07623-JD, 2020 WL 95633, at *2 (N.D. Cal. Jan. 8, 2020). That is the situation with Cristobal, *see* Dkt. No. 1 ¶ 15 (naming San Francisco Acting Field Director Jennings as respondent), and the government has not presented a good reason for a different outcome here.
>
> The government overreads *Rumsfeld v. Padilla*, 542 U.S. 426 (2004), to suggest that the Supreme Court has adopted a "bright-line district-of-confinement rule" that "applies in the context of immigration detention." Dkt. No. 16 at 9. To the contrary, the Supreme Court expressly declined to adopt a bright-line rule for habeas petitions by aliens with respect to who may be a proper respondent for purposes of habeas jurisdiction. *See Rumsfeld*, 542 U.S. at 435 n.8. The government construes *Lopez-Marroquin v. Barr*, 955 F.3d 759 (9th Cir. 2020), as confirming the ostensible bright-line rule in *Padilla*, but *Padilla* said no such thing. *Lopez-Marroquin* simply cited *Padilla* without any gesture at resolving the question the Supreme Court left open, and so does not advance the government's argument in any way.
>
> While that is enough to deny the jurisdiction objection, it is worth

---

[3] Respondents criticize Ameen for not being able to definitely identify which official within ICE's San Francisco AOR is directly responsible for the GSA facility or otherwise "directly" involved in this case. Reply [Dkt. No. 23] at 8 n.9. However, Ameen found what he could – from public records – regarding the operation of the GSA facility; that information suggests that those in authority over the GSA are located in San Francisco. *See* Supplemental Declaration of Siobhan Waldron [Dkt. No. 22-1], ¶ 4. Ameen also identifies regulations that confer authority over Ameen's custody, confirming that the FOD has that authority. *See* 8 C.F.R. § 236.1(d)(1), 8 C.F.R. § 241.4(c). While the respondents note that other sections of those regulations provide some level of responsibility over whether and when to take individuals into custody or release them from custody, respondents provide no declaration or other information regarding who has that authority with respect to Ameen.

> noting that the government also has not demonstrated that respondent Jennings in San Francisco is not a proper respondent. It takes the indirect tack of suggesting that a better candidate might be the assistant field director of the San Francisco Field Office "assigned to the Bakersfield Sub-Office within ERO [Enforcement and Removal Operations] San Francisco," which is within the Eastern District. *See* Dkt. No. 16-1 (Mull Decl.) ¶ 1 (brackets added for clarity). Even accepting this proposition solely for discussion, it does not lead to a different outcome for jurisdiction. As the government's own submission makes clear, that official works for the San Francisco Field Office. Consequently, any habeas relief ordered by the Court would necessarily be directed to the San Francisco office, which is within the Northern District. *See Ahn*, 2020 WL 2113678, at *2. The government has not shown otherwise.

*Meneses v. Jennings*, No. 21-CV-07193-JD, 2021 WL 4804293, at *1-2 (N.D. Cal. Oct. 14, 2021).

The Honorable Beth L. Freeman found jurisdiction in a similar case, noting:

> *Padilla* refused to decide who the proper respondent is in the immigration detention context, however.
>
> 'Courts in this district repeatedly have held, both before and since *Lopez-Marroquin*, that *Padilla* does not extend to cases such as this one where the immediate custodian lacks any actual authority over the immigrant detainee.' *Domingo v. Barr*, No. 20-CV-06089-YGR, 2020 WL 5798238, at *2 (N.D. Cal. Sept. 29, 2020). This Court concurs with the approach taken by Judge Yvonne Gonzalez Rogers in *Domingo* as well as other courts in and beyond this district. *See, e.g., Montoya Echeverria v. Barr*, No. 20-CV-02917-JSC, 2020 WL 2759731, at *3-4 (N.D. Cal. May 27, 2020); *Zepeda Rivas v. Jennings*, No. 20-CV-02731-VC, 445 F.Supp.3d 36, 2020 WL 2059848, at *2 (N.D. Cal. April 29, 2020); *Rodriguez Sanchez v. Decker*, No. 18-CV-8798 (AJN), 2019 WL 3840977, at *2 (S.D.N.Y. Aug. 15, 2019); *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1187 (N.D. Cal. 2017). As such, this Court has subject matter jurisdiction and may grant relief pursuant to 28 U.S.C. § 2241.

*Perera v. Jennings et al.*, No. 21-CV-04136-BLF, 2021 WL 2400981, at *2 (N.D. Cal. June 11, 2021); *see also Doe v. Garland*, Case No. 3:21-cv-06533-LB, Dkt. No. 26 (Dec. 2, 2021) ("The court appreciates the government's nuanced argument and nonetheless follows *Domingo* and *Perera* as persuasive.").

I agree with my colleagues' analyses. I conclude, particularly given the unrebutted evidence that the San Francisco AOR and Kaiser who is the Acting FOD have ultimate control over the GSA where Ameen is confined, that I have jurisdiction to determine Ameen's Petition.

## II.     BOND HEARING

Having determined that I have jurisdiction, I GRANT the Petition in limited respect. As I

explained in detail in *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414 (N.D. Cal. Dec. 22, 2020) – a decision whose detailed analysis I incorporate herein – the burden of proof on flight risk and danger to the community is properly placed on the government, even in an initial Section 1226(a) bond hearing. *Id*. at *4-*7. The government has presented no intervening Ninth Circuit authority that would support my revisiting that determination.[4]

The IJ's failure to place the burden of proving flight risk or danger to community on Ameen violated his due process rights and the holding of *Singh*. Placing the burden on the government is particularly appropriate in Ameen's case where the government had amassed significant amounts of evidence from the extradition proceedings and Ameen had been in federal custody since 2018. There was no basis for placing the burden of proof on Ameen in his initial bond hearing. He is entitled to a constitutionally compliant bond hearing to be held within thirty days of the date of this Order.

Even if the government is correct that at the initial Section 1226(a) bond hearing the burden of proof should typically be placed on the person seeking bond, I also find in the alternative that Ameen is entitled to another bond hearing within the next thirty days under *Mathews v. Eldridge*, 424 U.S. 319 (1976)[5] and in light of his prolonged detention. *See Rajnish*, 2020 WL 7626414, at *8. Ameen has been in custody since 2018 and was only provided a bond hearing as of early December 2021. While each side argues that any delay was the fault of the

---

[4] I reject the government's position that I should not reach the merits of Ameen's Petition and, should instead require him to exhaust his appeal of the denial of bond before the BIA. MTD/Return at 16-19. While exhaustion is appropriately required when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review" *see Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007), exhaustion will not be required here where "the agency" including the BIA has repeatedly and wrongly placed the burden of proof on petitioners and where the record in this case has been exhaustively made as a result of the extradition proceedings and the significant amount of evidence both sides admit was presented to the IJ at the December 2021 bond hearing. *See, e.g., Sahota v. Allen*, No. 20-CV-03180-WHO, 2020 WL 2992872, at *4 (N.D. Cal. June 4, 2020) (finding exhaustion not appropriate).

[5] Under *Mathews*, courts consider (1) the individual's interest, (2) the government's interest, and (3) the risk of erroneous deprivation of the right absent the further procedures. *Id*. at 334.

other (Ameen being advised not to seek bond during the extradition proceedings, delays in securing counsel, delays from switching IJs, etc.), Ameen has been in federal detention for an excessive period and his initial bond hearing – as noted above – was constitutionally deficient. Moreover, events since the initial bond hearing – including the IJ's recent determination to grant Ameen protection under the Convention Against Terrorism – also weigh in favor of providing a renewed bond hearing when weighing Ameen's interests, the government's interests, and the risk of erroneous deprivation of Ameen's liberty under *Mathews*. *See Rajnish*, 2020 WL 7626414, at *9 ("Rajnish was adjudicated by an IJ to be entitled to withholding of removal. That reality almost certainly makes him less of a flight risk—or, at the very least, is something an IJ would seriously consider.").[6]

## CONCLUSION

I do not reach the merits of the IJ's bond determination, despite the Petition raising the argument and the respondents addressing it in their Motion to Dismiss and Return. Instead, for the reasons discussed above, I determine on the particular facts of Ameen's case that he is entitled to a constitutionally-compliant bond hearing within thirty days of the date of this Order.

**IT IS SO ORDERED.**

Dated: April 19, 2022

William H. Orrick
United States District Judge

---

[6] I recognize that a bond hearing on or before May 19, 2022, would be approximately five months since Ameen's first bond hearing. That is approaching but not exceeding the six-month mark that Ninth Circuit authority recognizes as prolonged. *See Rajnish*, 2020 WL 7626414 at *8. Ameen has, however, been in ICE custody for a year without a constitutionally-compliant bond hearing.

10