UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OMAR ABDULSATTAR AMEEN,<br>  Plaintiff,<br>  v.<br>DAVID JENNINGS, et al.,<br>  Defendants. | Case No. 22-cv-00140-WHO<br><br>**ORDER DENYING MOTION TO ENFORCE**<br>Re: Dkt. No. 34 |

On April 19, 2022, I granted Petitioner Omar Ameen's Petition for a Writ of Habeas Corpus in limited part. Dkt. No. 31. Specifically, I required respondents (the United States Attorney General, the Secretary of Homeland Security ("DHS"), and the Director of the San Francisco Immigration and Customs Enforcement ("ICE") Field Office to provide Ameen a constitutionally sufficient bond hearing by placing the burden of proof on the government to show by clear and convincing evidence that he remains a flight risk or danger to the community during the pendency of the removal proceedings that the United States brought against him.

Pursuant to my Order, the assigned Immigration Judge ("IJ") held a second bond hearing over three days in May 2022. In support of defendants' argument at that bond hearing, DHS filed new, unclassified evidence, including declarations from FBI Special Agent Jessi Groff and Lt. Adrian Medina (an Intelligence Officer in the Naval Special Warfare Command). Groff and Medina also testified at the hearing and were subject to cross-examination.

On May 17, 2022, the IJ issued a decision denying Ameen's release. She concluded that, by clear and convincing evidence, Ameen presented a danger to the community and was a flight risk. Ameen filed a motion here on June 13, 2022, seeking to enforce my earlier judgment. He argued that the government and IJ failed to provide him a constitutionally sufficient bond hearing. In the motion, Ameen asserts that the IJ violated his due process rights by: (i) relying on classified information that deprived Ameen of his right to confrontation; (ii) misapplying the clear-and-convincing evidence standard in concluding the government had met its burden; (iii) holding the parties to different standards; and (iv) failing to consider electronic monitoring as an alternative to

detention. As a result of those violations, Ameen asked me to order his release from custody. Dkt. No. 34.

Two days after he filed his motion to enforce, the Ninth Circuit confirmed "that the determination of whether a particular noncitizen poses a danger to the community is a discretionary determination, which a federal court may not review." *Martinez v. Clark*, 36 F.4th 1219, 1228 (9th Cir. 2022). The court also held that "[d]ue process does not require immigration courts to consider conditional release when determining whether to continue to detain an alien under § 1226(c) as a danger to the community." *Id*. at 1231. That said, the *Martinez* court affirmed that district courts have "jurisdiction to review [] claims [] that the BIA erred by applying the wrong burden of proof and that due process required the BIA to consider alternatives to detention, such as conditional parole." *Id*. at 1230.

Presumably as a result of the *Martinez* decision, in Reply Ameen narrowed his focus and argued that his release is warranted based on due process violations due to (i) the government's use of and the IJ's reliance on classified information regarding Ameen's purported role as leader of a cell that made identifiable improvised explosive devices ("IEDs") and (ii) the IJ's failure to apply the clear and convincing standard, as shown by "red flags" demonstrating that despite purporting to apply the correct standard, the IJ impermissibly accepted the government's blanket assertions (made without corroborating evidence) while "intensely scrutinizing" Ameen's evidence. Dkt. No. 46.

After a hearing on July 21, 2022, and for the reasons discussed below, Ameen's motion to enforce the judgment is DENIED.

## I.   JURISDICTION/EXHAUSTION

Initially, the government argues that I do not have jurisdiction to review the IJ's second bond determination as a "motion to enforce" my prior judgment because the motion is essentially a second habeas petition that should be considered (as the government argued before) by a judge in the Eastern District of California and is subject to exhaustion by appeal to the BIA in the first instance. Respondents' Opposition ("Oppo.," Dkt. No. 45) at 4, 19-21. For the same reasons I articulated in my April 19, 2022 Order, I find that I have jurisdiction to reach Ameen's

1  constitutional due process claims.  I will not require exhaustion before reaching the merits of
2  Ameen's due process arguments.

## II. RELIANCE ON CLASSIFIED INFORMATION

Ameen argues that in reaching her dangerousness conclusion, the IJ impermissibly relied on classified information that was introduced into the hearing by Lt. Medina but was not produced either to the IJ or to Ameen's counsel.  Specifically, Ameen points to Lt. Medina's mention on cross-examination of "validated intelligence reports" that the IJ also referenced in her opinion as confirming Special Agent Groff's belief that Ameen was involved with the building and placement of IEDs in Iraq.  When asked whether he could identify evidence to support his testimony that "Omar was an IED facilitator," Lt. Medina responded, "[n]o that would reveal the sources and methods."  Dkt. No. 45-3 at ECF Pg. 2 of 4.  The next day, when asked about proof that Ameen built and planted IEDs, Lt. Medina testified that he had "multiple source reporting and intelligence products validating the information."  When asked for corroborating information, he responded "[a]s I said previously, those reports are classified and they are available to the government."  He asserted that he could affirm under oath "that I have validated intelligence reports that verify that Omar led and participated in the placement and building of IEDs," referencing again his experience and "knowledge of what exists at a classified level" to corroborate his testimony.  Dkt. No. 45-3 at ECF pg. 4 of 4.

Ameen argues that this testimony regarding his alleged role with IEDs was the "crux" of the government's evidence that supported the IJ's dangerousness conclusion.  He then cites to a series of cases recognizing the "'immutable' principle of due process 'that where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'" *Zerezghi v. United States Citizenship & Immigr. Servs.*, 955 F.3d 802, 813 (9th Cir. 2020) (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)); *see also Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1070 (9th Cir. 1995) (holding that the "use of undisclosed information in adjudications should be presumptively

unconstitutional")[1]; *Alcaraz-Enriquez v. Garland*, 19 F.4th 1224, 1231 (9th Cir. 2021 ("And because Congress has specifically provided that an alien in removal proceedings must be given 'a reasonable opportunity ... to cross-examine witnesses presented by the Government,' 8 U.S.C. § 1229a(b)(4)(B), we have held that the government deprives the alien of a fundamentally fair hearing when it fails 'to make a good faith effort to afford the alien a reasonable opportunity to confront and to cross-examine the witness against him.'" (quoting *Saidane v. INS*, 129 F.3d 1063, 1066 (9th Cir. 1997)).[2] Ameen also points to 8 U.S.C. § 1229a(b)(4)(B), arguing that statutory section prohibits the use of classified information by the government to establish deportability or custody.

The government responds first by pointing out that the IJ's denial of bond rested on her findings that Ameen was *both* a danger to the community and a flight risk. Either ground would suffice to deny bond. The classified information that Lt. Medina and Special Agent Groff may have known and on which they purportedly relied but did not disclose to either the IJ or Ameen's counsel, related to dangerousness, not risk of flight. It would not have undermined the IJ's conclusion. On that basis alone, Ameen's motion fails. Bond Redetermination at 4-5.

Even if considered separately on the merits, Ameen's argument fails. It is significant that

---

[1] In *Zerezghi*, the court found that the BIA violated due process by not disclosing to immigration petitioners the existence of a "rental application" that purported to show one of them had engaged in prior marriage fraud before denying their "Form I-130 Petition for Alien Relative." Because the petitioners received "only a vague reference to unspecified 'records,'" they were denied due process as "they had no meaningful opportunity to respond to the apartment-rental application before USCIS made its determination." *Id*. Here, there is no allegation that "secret" evidence was used by the IJ in reaching her decision.

[2] In *Alcaraz-Enriquez v. Garland*, the court remanded the IJ's determination denying withholding of removal proceedings because it was based on the determination that the petitioner's "domestic assault was a particularly serious crime" itself based "at least some measure on the aggravating facts of the probation report" and DHS did not make a good faith effort to produce the probation officer who authored that report. *Id*., 19 F.4th at 1232. As the court explained, "[d]espite its obligation under *Saidane*, the DHS made no effort—good faith or otherwise—to procure for Alcaraz's cross-examination the witnesses whose testimony was embodied in the probation report and upon whose testimony the BIA ultimately relied in denying his appeal. [] This failure impugned the probation report's reliability and rendered the BIA's procedure fundamentally unfair. . . So under the circumstances of this case—that is, in light of the BIA's failure to make a good-faith effort to let Alcaraz confront the witnesses against him—the BIA's reliance on the probation officer's report was error." *Id*., 19 F.4th at 1231 (internal citations omitted). Here, both Special Agent Groff and Lt. Medina testified in person and were subject to near-complete cross-examination.

the purportedly classified "validated intelligence reports" were not affirmatively introduced by the government by production to the IJ or through Groff's or Medina's testimony. Instead, as noted above, mention of the reports only arose in cross-examination when Medina was questioned about the sources of his opinions; Medina stated that he relied *in part* on "validated intelligence reports."[3]

The IED evidence was not based solely on the validated intelligence reports. The IJ made a reference to other evidence when noting that "[i]ndeed, Special Agent Groff was not alone" in her conclusion that Ameen likely had a role with making or placing IEDs in Iraq. She referred to Medina's testimony and referenced to reports as another, separate source. Bond Redetermination at 3. Groff's independent belief regarding Ameen's role with IEDs in Iraq was based on her investigation of Ameen's activities in the United States. Ameen does not dispute that Special Agent Groff and Lt. Medina also relied on witness interviews and, for Medina, his own personal observations while in Iraq. To be sure, Ameen attempts to downplay the role of witness interviews confirming his role with IEDs in Iraq by contending that Medina's testimony was overly-general; Medina could not identify the number of confirming witnesses or the dates of the relevant events about which the witnesses had knowledge. But both Groff and Medina relied on witness testimony and Ameen's counsel had the opportunity to cross-examine them and point out the alleged generalities or deficiencies to the IJ. In reaching her conclusion, the IJ was entitled to rely on that testimony, as well as the FBI letterhead memoranda and disclosed witness interviews on which Ameen was freely able to probe and cross-examine Groff and Medina. *Id*. at 2-3.[4]

Finally, setting the IED testimony of Groff and Medina aside, the IJ also relied on other grounds that constitute clear and convincing evidence supporting her discretionary determination.

---

[3] The government does not concede that the "validated intelligence reports" are references to classified information. For purposes of this Order, I assume they are.

[4] Ameen argues that the disclosed LHMs cannot provide an independent basis for the IED determination specifically or the IJ's dangerousness determination more generally because the IJ had, in her removability decision, identified deficiencies in a May 2020 LHM. Mot. to Enforce at 2-3, 12-13, Dkt. No. 28-1 at 19-20. It does not appear that in her removal determination, the IJ discounted LHM#5 (January 21, 2022 LHM, Dkt. No. 45-1) that contained recently declassified summaries of Department of Defense Reports that support both Lt. Medina's testimony and the IJ's dangerousness determination.

She noted Ameen's "numerous communications with individuals known to have engaged in terrorist activities" and "numerous other concerns" like the presence of ISIS iconography on Ameen's seized device, his contact or attempted contact with known associates of terrorists, and his misrepresentation of his interactions or involvement with armed groups or members of armed groups. *Id*. at 3-4. Because the IJ relied on other evidence that met the clear and convincing standard to support her discretionary determination, any reliance on classified information that Ameen was a danger to the community was not a denial of due process.

### III. APPLICATION OF CLEAR AND CONVINCING STANDARD

Generally, where the IJ acknowledges and purports to apply the correct legal standard in determining whether a detainee presents a danger to the community or a flight risk by clear and convincing evidence, "in the absence of any red flags, we take the BIA at its word." *Martinez*, 36 F.4th at 1230.[5] The IJ is not required to "discuss each piece of evidence submitted," and "[w]hen nothing in the record or the BIA's decision indicates a failure to consider all the evidence," the court must rely on the BIA's statement that it properly assessed the entire record. *Cole v. Holder*, 659 F.3d 762, 771 (9th Cir. 2011). "But when there is an indication that something is amiss, like if the BIA 'misstat[es] the record' or 'fail[s] to mention highly probative or potentially dispositive evidence,' we do not credit its use of a 'catchall phrase' to the contrary." *Martinez*, 36 F.4th at 1230-31 (quoting *Cole*, 659 F.3d at 771–72).

Ameen argues that such "red flags" are apparent in the IJ's determination because the IJ "ignored apparent deficiencies in witness testimony and misconstrued evidence" regarding the flight risk determination and "did little to substantiate" the government's witnesses' testimony regarding dangerousness. Reply at 7. The specific red flags Ameen identifies are: (1) the IJ's failure to cite evidence to corroborate the supposed connection between Ameen and his cousin Ghassan, other than relying on Groff's opinion that (Ameen alleges) was not supported by "sufficient facts"; and (2) that the IJ's decision "amounts to a wholesale adoption" of the

---

[5] The parties agree that the Ninth Circuit caselaw regarding the standard applied to review the BIA's consideration of the record applies likewise to a District Court's review of an IJ's consideration of evidence. *See* Oppo. at 9; Reply at 7.

government's assessment that Ameen is dangerous and demonstrates the IJ's failure to "properly scrutinize" the government's witnesses. Reply at 8. Ameen contrasts that wholesale adoption with the IJ's rejection of declarations submitted by Ameen's family members based on a failure of authentication. *Id*. at 8-9.[6] As to flight risk, Ameen contends that the IJ again failed to "substantiate" the government's evidence when accepting Ameen's supposed connections to family members based solely on the conjecture of Groff, who could not identify any recent evidence of connection.

I conclude that the IJ applied the correct burden of proof in this case. The "red flags" identified by Ameen are not true "red flags" but instead disagreements about the discretionary determinations made by the IJ on considered and disputed evidence. Ameen identifies no particular critical evidence that the IJ ignored or misconstrued when considering the record on dangerousness.[7] Instead, he challenges how the IJ weighed that evidence and reached her discretionary conclusions based in large part on the Groff's and Medina's testimony, witnesses she expressly found were credible. Bond Redetermination at 1 n.1. As *Martinez* teaches, I cannot review those discretionary determinations.

Ameen's Motion to Enforce the judgment is DENIED.

**IT IS SO ORDERED.**

Dated: July 22, 2022

William H. Orrick
United States District Judge

---

[6] The IJ discounted the declarations of Ameen's brothers because they were only in English without any information on how they were secured, discounted other declarations in support of Ameen because they had a uniformity to them that undermined their persuasiveness, and generally discounted declarations in support of Ameen because the IJ was not able to examine the declarants. Dkt. Nos. 1-8 (Declarations) at ECF pg. nos. 12-35; 1-3 (Declarations) at ECF pg. Nos. 21-72, 34-2 (Bond Redetermination) at 35 (identifying "deficiencies" with declarations in support of Ameen, including Ameen's failure to identify "his ties to these individuals or how he obtained their declarations" and given the IJ did not have opportunity to "question the authors" of the declarations during the hearings).

[7] The only part of the record that Ameen contends that the IJ misconstrued is when she addressed Ameen's ability to pay bond. That issue is only relevant where a detainee is not found to be a danger to the community which, as noted above, the IJ found. As a result, even if the IJ failed to properly determine that Ameen's family is indigent, any error was harmless.